UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ERICA HUEGEL and DAVID HUEGEL, JR.,　)
　　　　　　　　　　　　　　　　　　　)
　　Plaintiffs,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　) 　Civil No. 3:15-cv-550
　　　　　　　　　　　　　　　　　　　) 　Judge Aleta A. Trauger
　　　　　　　　　　　　　　　　　　　)
TARGET CORPORATION,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　Defendant.　　　　　　　　　　　　)

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment (Docket No. 24) filed by the defendant, Target Corporation ("Target"), to which the plaintiffs have filed a Response (Docket No. 27), and Target has filed a Reply (Docket No. 30). For the following reasons, the Motion for Summary Judgment will be denied.

## FACTS[1]

This is a premises liability case arising from injuries sustained by one of the plaintiffs, Erica Huegel, after she slipped in a store owned and operated by the defendant, Target. On April 17, 2014, Mrs. Huegel was shopping at a Target store in Franklin, Tennessee with her young daughter, her cousin, Shelby Vineyard, and Ms. Vineyard's young son. At some point in

---

[1] Unless otherwise noted, the facts recounted in this section are drawn primarily from Target's Statement of Undisputed Material Facts (Docket No. 26), the plaintiffs' response thereto (Docket No. 28), the plaintiffs' Statement of Additional Facts (Docket No. 29), and Target's response thereto (Docket No. 31). This section also contains facts from Target's Motion for Summary Judgment (Docket No. 24) and Memorandum of Law in support thereof (Docket No. 25), the plaintiffs' Response in Opposition (Docket No. 27), and Target's Reply (Docket No. 30) that are not refuted or contradicted by the opposing party or the record. Where there is a genuine dispute of fact, the court will construe the fact in the light most favorable to the plaintiffs as the non-moving party.

1

their shopping, the two women entered the grocery section of the store, and they eventually turned down the aisle where Target stocks applesauce. As they looked for packets of squeezable applesauce on the shelves, Ms. Vineyard pushed a shopping cart down the aisle and Mrs. Huegel followed behind. (Docket No. 24-1 (Dep. E. Huegel), 30:3–21, 34:11–13.) As they progressed down the aisle, neither Mrs. Huegel nor Ms. Vineyard noticed that a puddle of applesauce approximately twelve inches wide and an inch or two thick sat on the floor in the aisle. According to Mrs. Huegel, the applesauce "wasn't noticeable" because it was a color similar to that of the floor and, therefore, "blended in" with the floor.[2] (*Id.* at 30:22–31:3, 33:3–6.) Mrs. Huegel slipped in this applesauce and fell,[3] allegedly causing serious injury to her hips that ultimately required two surgeries and prolonged rehabilitation. (Docket No. 27, p. 2.) Mrs. Huegel and her husband, David Huegel, Jr., now seek to recover from Target for her injuries and an associated loss of consortium.

The applesauce on which Mrs. Huegel slipped was determined to have come from a 46 ounce jar that was found in the vicinity of the spill. Both Mrs. Huegel and Ms. Vineyard have admitted that they do not know how the applesauce came to be on the floor or how long it had

---

[2] Target disputes this portion of Mrs. Huegel's deposition testimony by citing the deposition testimony of Ms. Vineyard, who agreed that the applesauce was "a brownish color" and "different from the color of the floor." (Docket No. 24-3 (Dep. S. Vineyard), 14:23–15:1.) On summary judgment, however, the court must construe all disputes of fact in the light most favorable to Mrs. Huegel as the non-moving party.

[3] It is unclear whether Mrs. Huegel fell to the floor after she slipped, which she appears to claim in her deposition. (Docket No. 24-1, 36:3–4.) In a recorded statement made shortly after the incident, Mrs. Huegel told a Target representative that she never fell to the floor (Docket No. 24-2, p. 3 ("[Ms. Vineyard] prevented me from falling all the way to the ground.")), a recollection corroborated by Ms. Vineyard (Docket No. 24-3, 12:23–13:2 (testifying that Mrs. Huegel grabbed her when she slipped, which "prevented [Mrs. Huegel] from falling to the ground")).

been there. (Docket No. 28 ¶¶ 6–7, 16–18.) They further admit that the Target employee working in the general area of the store in which they were shopping – Debra Scobey – did not know how the applesauce came to be on the floor or how long it had been there. (*Id.* ¶¶ 26, 28.) Mrs. Huegel contends, however, that at least one Target employee was aware of the spilled applesauce before she slipped, as evidenced by the fact that, "within seconds" of the incident, a female Target employee (most likely Ms. Scobey[4]) "[came] down the aisle with a mop." (Docket No. 24-1, 37:4–10; *accord* Docket No. 24-2 (Huegel Statement), pp. 3–5.) Moreover, Mrs. Huegel testified that she had been in the "vicinity" of the applesauce aisle for "10 to 20 minutes" prior to her fall and, during that time, did not see any Target employee in the area or hear a jar of applesauce "breaking or dropping." (Docket No. 24-1, 75:5–11, 77:4–11.)

Target's standard policies contain a number of directives aimed at reducing the hazard posed by spills and debris throughout the store. Pursuant to these policies, employees are trained to "routinely and regularly" walk the store, in addition to their assigned work areas, while scanning for hazards. (Docket No. 28 ¶ 8.) Target admits to being aware that the Franklin store "was a 'very busy store' and that someone should be inspecting the floor at least every fifteen minutes." (Docket No. 31 ¶ 13 (quoting Docket No. 24-5 (Dep. C. Wilhoyte), 20:23–21:18).) Moreover, if an employee discovers a spill, the employee is supposed to remain in the area of the spill so that it does not stand unguarded, warn customers of the hazard, contact additional employees to retrieve the tools necessary to clean the area, and assist in cleaning the spill.

---

[4] Mrs. Huegel did not identify Ms. Scobey as the female employee who appeared with a mop, but Ms. Scobey herself has acknowledged that she was the first Target employee to respond to the area of the spill and that it was a few minutes before another employee could join her there. (Docket No. 24-4 (Dep. Scobey), 13:16–18, 14:2–8 ("I was first on the scene.").)

3

## **PROCEDURAL HISTORY**

On April 8, 2015, Mr. and Mrs. Huegel filed an action against Target in the Circuit Court for Williamson County, Tennessee, alleging that Target acted negligently when it breached its duty to maintain its property in a safe condition or warn Mrs. Huegel of an unsafe condition, resulting in Mrs. Huegel's injuries. (Docket No. 1-1 ¶¶ 5.1–7.5.) Mr. and Mrs. Huegel seek compensation for pain and suffering, loss of capacity for the enjoyment of life, medical costs, lost future earnings, and loss of consortium. (*Id.* at pp. 5–6.) A month after the Complaint was filed, Target removed the action to this court under the court's diversity jurisdiction, because Mrs. Huegel is a citizen of Tennessee and Target is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. (Docket No. 1 ¶¶ 5–6.) On June 19, 2015, Target filed an Answer, denying that it breached any duty to Mrs. Huegel and asserting that Mrs. Huegel failed to use reasonable care for her own safety in light of an "obvious" risk, making her at fault for her own injuries. (Docket No. 5, pp. 5–6.) To the extent that Mrs. Huegel is determined to be more than fifty percent at fault for her injuries, Target argues that she and her husband are barred from recovery for their injuries by principles of comparative fault under Tennessee law. (*Id.*)

On December 22, 2016, Target filed a Motion for Summary Judgment (Docket No. 24), accompanied by a Memorandum (Docket No. 25), a Statement of Undisputed Material Facts (Docket No. 26), and transcripts of the depositions of Mrs. Huegel and various Target employees (Docket Nos. 24-1–24-5). In the Motion, Target argues that in cannot be held liable for Mrs. Huegel's injuries because no evidence demonstrates that it or its employees spilled the applesauce in which Mrs. Huegel slipped or that they had actual or constructive notice of the spill. (Docket No. 25, p. 7.) To support this argument, Target notes that Mrs. Huegel admitted

4

in her deposition that she did not know how the applesauce came to be on the floor, who had put it there, how long it had been there, or whether anyone at Target knew of the spill prior to the incident. (*Id.*) Target further argues that Mrs. Huegel herself was the "sole proximate cause" of her injuries, because the spill on the floor was an "open and obvious" hazard, and Mrs. Huegel's slipping in the applesauce was due to her own inattentiveness. (*Id.* at pp. 13–17.) According to Target, Mrs. Huegel's negligence was at least equal to its own, if any, and she and her husband are thereby precluded from recovering for her injuries by principles of comparative fault. (*Id.* at p. 18.)

On January 11, 2017, Mrs. Huegel filed a Response in Opposition to Target's motion (Docket No. 27), accompanied by a Response to Target's Statement of Undisputed Facts (Docket No. 28), a Statement of Additional Facts in dispute (Docket No. 29), and excerpts from the transcript of the deposition of Steven Maurer, the "leader on duty" on April 17, 2014 (Docket No. 27-1). In her Response, Mrs. Huegel concedes that she has no evidence demonstrating that Target or its employees created the spill, but she argues that genuine disputes of fact support her contention that Target had actual or constructive notice of the hazard. (Docket No. 27, p. 2.) According to Mrs. Huegel, her testimony regarding the Target employee who arrived in the aisle with a mop within seconds of her slipping in the applesauce supports the reasonable inference that, at the time that Mrs. Huegel slipped, the employee had already noticed the puddle of applesauce and gone to retrieve the mop. (*Id.* at p. 9 (citing Docket No. 24-1, 37:1–5).) Moreover, Mrs. Huegel argues that Target had constructive notice of the spill, because she was in the vicinity of the applesauce aisle for ten to twenty minutes prior to the incident and never heard the sound of a jar falling or breaking, indicating that the spill had been present for at least that amount of time. (*Id.* at pp. 10–12 (citing Docket No. 24-1, 75:7–11, 76:20–77:11).) Finally,

Mrs. Huegel argues that Target has the burden of proving, as an affirmative defense, that she was comparatively more at fault for her injuries than it was. (*Id.* at pp. 15–19.) According to Mrs. Huegel, Target cannot meet this burden, because the foreseeability and gravity of the risk posed by the spill outweighed the small burden on Target to maintain a safe store and thereby prevent such hazards. (*Id.*)

On January 17, 2017, Target filed a Reply in support of its motion (Docket No. 30) and a Response to Mrs. Huegel's Statement of Additional Facts (Docket No. 31). In the Reply, Target argues that Mrs. Huegel's alleged evidence of actual or constructive notice of the spill is nothing more than "conjecture and inference," which does not allow her to survive summary judgment. (Docket No. 30, pp. 2–3.) Target further argues that the deposition testimony of Mrs. Huegel and Ms. Vineyard establishes that the applesauce on the floor was "easily noticeable" and, therefore, an open and obvious risk that Mrs. Huegel failed to reasonably avoid. (*Id.* at pp. 4–5.) Target then reiterates its position that Mrs. Huegel's negligence in failing to avoid the danger posed by the spill is at least equal to its own, and she and her husband are thereby precluded from recovering for her injuries.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

322–23 (1986). Conversely, a moving party bearing the burden of proof on a claim must show that the non-moving party cannot raise a genuine issue of fact regarding any element of the relevant claims. In both instances, "[i]n evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

In order to prevail on a negligence claim, a plaintiff must produce evidence establishing the following elements: (1) a duty of care owed by defendant to plaintiff, (2) a breach of that duty of care, (3) an injury or loss, (4) cause in fact, and (5) proximate or legal cause. *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013). For a premises liability claim, the owner of the premises has the duty to exercise "reasonable care" with regard to social guests or business invitees on the premises. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). Because a property owner has superior knowledge of the condition of his property, he has "the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014). In

7

light of these principles, the court must determine (1) whether the evidence in the record reasonably supports an inference that Target had actual or constructive notice of the dangerous condition that allegedly caused Mrs. Huegel's injuries, and (2) whether Target has sufficiently established Mrs. Huegel's negligence was at least equal to its own, such that it cannot be held liable for her injuries.

I.    **Notice of Dangerous Condition**

For an owner of premises to be held liable for allowing a dangerous or defective condition to exist, the plaintiff must prove – in addition to the elements of negligence – that (1) the condition was caused or created by the owner or his agent or, (2) if the condition was created by someone other than the owner or his agent, that the owner had actual or constructive notice that the condition existed prior to the accident. *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996). Mrs. Huegel concedes that "there is no evidence that one of Target's employees actually created the spill of applesauce." (Docket No. 27, p. 8.) She argues, however, that genuine disputes of fact exist that reasonably support the inference that, through its employees, Target had actual and constructive notice of the spill prior to her slipping in the applesauce and injuring herself. (*Id.*)

After reviewing the evidence in the record and drawing all reasonable inferences in Mrs. Huegel's favor – as the court is obliged to do on summary judgment – the court concludes that Mrs. Huegel has demonstrated genuine disputes of material fact supporting her claim that Target had actual notice of the spilled applesauce prior to her slipping in it. The Tennessee Supreme Court has defined "actual" notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994).

8

Under Tennessee law, an owner of premises must have actual notice of a dangerous condition "sufficiently in advance of the accident to take reasonable steps to correct the danger or warn of its existence" before it can be held liable for injuries caused by that dangerous condition. *Longmire v. The Kroger Co.*, 134 S.W.3d 186, 189 (Tenn. Ct. App. 2003). Mrs. Huegel has introduced evidence that, "within seconds" of her slipping, a Target employee – likely Ms. Scobey – entered the aisle with a mop. (Docket No. 24-1, 37:4–10; *accord* Docket No. 24-2, pp. 3–5.) The fact that an employee appeared with a mop immediately after Mrs. Huegel slipped in a puddle of applesauce gives rise to the reasonable inference that someone at Target had observed, or been informed of, the spill before Mrs. Huegel slipped, causing them to retrieve, or dispatch Ms. Scobey to retrieve, cleaning supplies.

Moreover, Ms. Scobey had been working in the same general area of the store as that in which Mrs. Huegel had been shopping immediately prior to her fall, yet Mrs. Huegel testified that she saw no Target employees in the general vicinity of the applesauce aisle for at least ten minutes. From these facts, a reasonable factfinder could draw the inference that it was Ms. Scobey herself who had noticed the spilled applesauce, which she left unattended while she retrieved a mop. Once she observed the spill, however, Ms. Scobey was obligated by Target policy to contact other employees to retrieve cleaning supplies so that she could remain in the area of the spill and warn customers of the hazard. A reasonable factfinder could conclude, therefore, that Ms. Scobey failed to take reasonable steps – as required by company policies – to warn customers in the general area of the existence of the spill, and Target can be held liable for injuries to its customers caused by that failure to warn.

Target disputes that a reasonable factfinder could draw these inferences by arguing that there are a number of hypothetical scenarios that could explain why an employee would have

9

entered the aisle with a mop, including that the employee had been "alerted to a spill by a customer close to the same time" as the incident or may simply have been "carrying the mop from or to another area of the store." (Docket No. 30, p. 3.) It is not Target, however, but Mrs. Huegel who is entitled to have the court draw all reasonable inferences in her favor on summary judgment, and the existence of multiple inferences that can be reasonably drawn from the evidence does not negate the fact that only some of them support a material element of Mrs. Huegel's claim and allow her to survive summary judgment. Mrs. Huegel, therefore, has demonstrated that genuine disputes of fact exist that reasonably support the inference that Target had actual notice of a dangerous condition in its store.[5]

## II. <u>Comparative Fault</u>

Target has raised the affirmative defense of comparative fault, arguing that the spilled applesauce was an "open and obvious" risk and that Target cannot be held liable for Mrs. Huegel's failure to act reasonably to avoid that risk. (Docket No. 25, p. 13.) Under Tennessee's comparative fault doctrine, Target owed Mrs. Huegel no duty of care unless "the foreseeability and gravity of the harm posed from [its] conduct, even if open and obvious, outweighed the burden on [Target] to engage in alternative conduct to avoid the harm." *Green v. Roberts*, 398 S.W.3d 172, 177 (Tenn. Ct. App. 2012) (quoting *Coln v. City of Savannah*, 966 S.W.2d 34, 43 (Tenn. 1998), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000)). In determining whether the foreseeability and gravity of harm is outweighed by the burden on the defendant to engage in alternative conduct, Tennessee courts

---

[5] Because the court concludes that genuine disputes of fact exist that reasonably support the inference that Target had actual notice of a dangerous condition in its store, it does not reach the question of whether the evidence also supports an inference that the company had constructive notice of the condition.

consider a number of factors, including "[w]hether the danger was known and appreciated by the plaintiff, [and] whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment." *Id.* (quoting *Coln*, 966 S.W.2d 34, 42). Target argues that it owed Mrs. Huegel no duty because the risk posed by the spilled applesauce was "easily noticeable" to anyone exercising reasonable caution, and it was Mrs. Huegel's own "inattentiveness" that prevented her from seeing the spill. (Docket No. 25, p. 16; Docket No. 30, p. 4.)

Target has failed to meet its burden, however, of demonstrating that Mrs. Huegel cannot raise a genuine issue of fact regarding her own allegedly negligent role in causing her injuries. Mrs. Huegel has introduced evidence demonstrating that the spilled applesauce was not a risk that would be obvious to a person exercising reasonable perception, intelligence, and judgment, because it was such a color that it "blended in" with the floor of the aisle. (Docket No. 24-1, 30:22–31:3, 33:3–6.) Moreover, Target's contention that the applesauce was an open and obvious danger is in direct tension with its argument that it had no notice of the spill, even though one of its employees "walked through the area where [Mrs. Huegel] had her occurrence and observed no spill or liquid substance on the floor." (Docket 25, p. 15.) Finally, even if Mrs. Huegel was harmed by an "obvious" danger, such harm is generally considered to be foreseeable by the owner of premises when he "has reason to expect that [an] invitee's attention may be distracted." *Leisure v. Whispering Pines Owners Ass'n, Inc.*, No. 1:15-cv-00069, 2016 WL 4176867, at *4 (M.D. Tenn. Aug. 8, 2016) (quoting Restatement (Second) of Torts § 343A (1965)). Presumably, Target could reasonably anticipate that customers in the Franklin store would be focused on the products on the shelves, as Mrs. Huegel testified she was, rather than on the floor of the store's aisles.

Target has, therefore, failed to meet its burden of demonstrating that the spill posed an

11

obvious risk to a person exercising reasonable perception, intelligence, and judgment. The court concludes, therefore, that it owed a duty of care to Mrs. Huegel, and the question of whether Target breached that duty is appropriately reserved for the jury. The record does not support Target's request for summary judgment and, accordingly, the court will deny its motion.

## CONCLUSION

For the reasons discussed herein, the Motion for Summary Judgment filed by Target will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge